DECISION AND JOURNAL ENTRY
{¶ 1} Defendant, Travis Wright, appeals from the judgment of the Medina County Court of Common Pleas finding him guilty of one count of rape under R.C. 2907.02(A)(1), one count of sexual battery under R.C. 2907.03(A)(2)-(3), and one count of burglary under R.C. 2911.12(A)(2). We affirm.
 {¶ 2} On October 3, 2002, the Medina County Grand Jury indicted Defendant of one count of rape, one count of sexual battery, and one count of burglary. A jury trial ensued. The court denied Defendant's motion for Civ.R. 29 acquittal, made after the close of the prosecution's evidence. Defendant offered no evidence on his own behalf. The jury found Defendant guilty on all counts. The trial court sentenced Defendant to concurrent five year sentences on the rape and burglary charges. The judge found that the sexual battery count was an allied offense of similar import to the rape count, and, therefore, did not sentence Defendant on that conviction. The court also found Defendant to be a sexually oriented offender. Appellant timely appealed and raises one assignment of error for our review.
 ASSIGNMENT OF ERROR
"The verdict is against the manifest weight of the evidence[.]"
 {¶ 3} In his only assignment of error, Defendant argues that his convictions were against the manifest weight of the evidence. Specifically, Defendant alleges that the evidence offered at trial was both contradictory and entirely implausible. We find Defendant's argument to be without merit.
 {¶ 4} When a defendant maintains that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986),33 Ohio App.3d 339, 340.
 {¶ 5} This court may only invoke the power to reverse based on manifest weight in extraordinary circumstances where the evidence presented at trial weighs heavily in favor of a defendant. Otten, 33 Ohio App.3d at 340.
 {¶ 6} R.C. 2907.02(A)(1)(c) defines rape as engaging in sexual conduct with a non-spouse whose ability to resist is impaired by a physical or mental condition. Sexual battery is defined by R.C. 2907.03(A)(2) as engaging in sexual conduct with a non-spouse when the offender knows that the victim's ability to understand the nature of or control the offender's conduct is substantially impaired. In the alternative, sexual battery may also include engaging in sexual conduct with a non-spouse when the offender knows that the victim submits only because the victim is unaware that the act is being committed. R.C.2907.03(A)(3). Sexual conduct includes oral stimulation and penetration, however slight, by any object into another's vagina. R.C. 2907.01(A). Courts have held that a sleeping individual may be sufficiently impaired by a physical or mental condition for a conviction to stand under this statute. State v. Snyder (Feb. 3, 1999), 9th Dist No. 18923, at 6-7.
 {¶ 7} R.C. 2911.12(A)(2), the burglary statute, prohibits an individual from using force, stealth or deception to "[t]respass in an occupied structure * * * when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense." The force necessary to convict under this statute includes violence and physical constraint. R.C. 2901.01(A)(1). If the offender enters an unlocked apartment, he may be convicted of burglary if he later commits a violent crime after entering. SeeState v. Fontes (2000), 87 Ohio St.3d 527, 2000-Ohio-472, syllabus; State v. Steffen (1987), 31 Ohio St.3d 111, 115.
 {¶ 8} Amanda Hite ("Hite"), the victim in this case, testified at trial that she and her boyfriend, Jason Paris ("Paris"), had returned to their apartment from the Valley City street fair around 2 a.m. on August 25, 2002. When they drove into the apartment parking area, they noticed Defendant knocking on the door of a downstairs apartment where Paris' brother formerly lived. Paris and Hite recognized Defendant as an acquaintance and informed Defendant that Paris' brother no longer lived at that apartment. Defendant then followed Paris and Hite into their apartment, though it is unclear whether Paris invited him or Defendant simply invited himself.
 {¶ 9} While in the apartment, Paris and Defendant talked and drank beer while Hite prepared some food in the kitchen. Paris testified that he mentioned to Defendant that he would be leaving around 3:00 a.m. for a two week work assignment in Chicago. According to both Paris and Hite, Defendant and Hite were never alone together in the apartment at that time. At about 2:30 a.m., Hite asked Paris to ask Defendant to leave so that she could spend some time with Paris before he left for his work assignment. Paris told Defendant to leave. According to the testimony of both Hite and Paris, at no time did Hite invite Defendant back to the apartment, or encourage him to return later for any reason.
 {¶ 10} After Defendant left, Paris and Hite spent some time together in the bedroom, where Hite promptly fell asleep. She did not hear the phone ring when Paris' employer called to say they were in the parking lot to pick him up. She did not hear Paris leave for his assignment. Paris was carrying a tool box and other objects on his way out of the apartment, and was in such a hurry to leave that he failed to lock the apartment door.
 {¶ 11} Hite testified that the next thing she remembered, after falling asleep, was awaking to the sensation of someone performing oral sex on her. She was not yet fully awake. She assumed Paris had returned for some reason. Then, still in her half wakeful state, she felt someone put a finger inside her vagina, kiss her stomach, and try to remove her shirt. Hite then testified that she felt the person try to penetrate her vaginally, and that it hurt. When she felt the pressure and pain, she reached up to touch the person's hair. It was only then that she realized that it was not her boyfriend, Paris. This jolted her awake.
 {¶ 12} She pushed the person off her, and ran to turn on a light, revealing Defendant on the bed. She started yelling at him: "why are you doing this?" She hit him. She kicked him. She told him to get out. He merely told her "you wanted me to do this" as he hastily dressed. In his hurry to leave, he left behind his red baseball cap.
 {¶ 13} It was about 5:30 a.m. Hite immediately tried to call Paris via Paris' boss's cell phone. When she could not reach Paris, she called Paris' brother, a friend of hers who lived only minutes away. Paris' brother immediately came over to the apartment. He testified that Hite was visibly upset and very emotional as she told him what had happened. At his suggestion, Hite called the police to report the rape. An officer arrived to take Hite's statement, and then the police transported Hite to the hospital where they followed rape protocol. Later that day, Hite identified Defendant from a photo array.
 {¶ 14} Around 1:00 p.m. that same day, Defendant called the police station and asked whether the police were looking for him and had a warrant. The dispatcher told him yes, and asked him to come voluntarily to the police station. Defendant stated that he was unavailable until around 6:00, whereupon the dispatcher asked if Defendant was at work. Yes, he told her — even though the evidence also showed that Defendant was not employed at that time. At 5:00, an hour before Defendant stated he would voluntarily go to the police station, an officer who was acquainted with Defendant observed Defendant walking around town. The officer, knowing of the outstanding warrant, approached Defendant. Defendant turned and ran in the opposite direction. The officer chased him, called for backup, and set up a five officer and one police canine perimeter, but failed to catch Defendant.
 {¶ 15} Later that same evening after 6:00, the police received a tip as to Defendant's location. A separate officer set up a perimeter, and approached Defendant. Regardless of the officer's plain clothes and unmarked car, Defendant recognized him as a police officer, and ran a second time. This time, however, the officer caught him.
 {¶ 16} Defendant exercised his right to not take the stand at trial, and offered no additional evidence. Defense counsel implied in opening and closing statements that the sexual encounter between Hite and Defendant was consensual. The only evidence offered during the trial as to this possibility was the testimony of a detective who indicated that he understood that Defendant was claiming the encounter was consensual. Defense counsel relied heavily upon the fact that no other person witnessed the encounter, and stressed the implausibility of Hite's story that during the incident she remained in a dream-like, half-awake state for between five or ten minutes before realizing that it was not Paris. Defendant also elicited testimony regarding Hite and Paris' past relationship: the two knew each other for many years; Paris was incarcerated for a short period of time; while Paris was away, Hite dated other men; Hite and Paris reached a difficult time in their relationship a year prior to this incident, possibly partly due to Hite dating other men, but they worked out their differences. Defense counsel implied that some relationship existed between Hite and Defendant at some point in time. Hite, though, vehemently denied this.
 {¶ 17} It is apparent in this case that the jury found Hite's testimony to be plausible and supported by other circumstantial evidence. The jury did not believe the implications that the encounter was consensual. The mere fact that the jury chose to believe the testimony of the prosecution's witnesses does not render a verdict against the manifest weight. State v. Moore,
9th Dist. No. 03CA0019, 2003-Ohio-6817, at ¶ 18, citing State v.Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757, at 4. We find that the verdict was not against the manifest weight of the evidence.
 {¶ 18} We overrule Defendant's assignment of error and affirm the judgment of the Medina County Court of Common Pleas.
Judgment affirmed.
Baird, J. and Carr, J., concur.