[Cite as *State v. Taylor*, 2016-Ohio-2927.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | CASE NO. 15 JE 0009 |
| V. | ) | |
| | ) | OPINION |
| ADAM D. TAYLOR, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:      Criminal Appeal from Court of Common
                               Pleas of Jefferson County, Ohio
                               Case No. 14CR46

JUDGMENT:                      Affirmed

APPEARANCES:
For Plaintiff-Appellee          Jane Hanlin
                                Prosecutor
                                Jeffrey J. Bruzzese
                                Assistant Prosecuting Attorney
                                16001 S.R. 7
                                Steubenville, Ohio 43952

For Defendant-Appellant         Attorney Bernard C. Batistel
                                2021 Sunset Blvd.
                                Steubenville, Ohio 43952

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Carol Ann Robb

Dated: May 4, 2016

DONOFRIO, P.J.

{¶1} Defendant-appellant, Adam Taylor, appeals from a Jefferson County Common Pleas Court judgment convicting him of sexual battery, unlawful sexual conduct with a minor, and rape.

{¶2} The victim in this case, S.H., lived with her grandfather in his trailer. A small camper was also located on the grandfather's property. Appellant lived in the camper. Appellant was S.H.'s mother's boyfriend. According to S.H., appellant was a father-figure to her. At the time of the alleged events, S.H.'s mother was in prison and S.H. was 14 years old.

{¶3} According to S.H., in late December 2013, appellant began to sneak into her room and molest her. S.H. stated that at first, appellant just rubbed her back. But she stated that things progressed and eventually appellant digitally raped her. The last alleged incident occurred in mid-March 2014.

{¶4} S.H. confided in her friend Mary that appellant had been molesting her. Mary and S.H. then told S.H.'s cousin Daniel, who in turn told their grandfather. S.H.'s grandfather called the police.

{¶5} A Jefferson County Grand Jury indicted appellant on two counts of sexual battery (Counts 1 and 2), third-degree felonies in violation of R.C. 2907.03(A)(3); two counts of unlawful sexual conduct with a minor (Counts 3 and 4), third-degree felonies in violation of R.C. 2907.04(A)(B)(3); and two counts of rape (Counts 5 and 6), first-degree felonies in violation of R.C. 2907.02(A)(2).

{¶6} The matter proceeded to a jury trial. Kirsten, S.H.'s friend, was the second witness. Kirsten had given a statement to the police regarding S.H. and appellant. But during cross examination, it came to light that Kirsten had given a second statement to the police. Both the prosecutor and defense counsel were unaware of this statement. (Feb. 25, Tr. 4, 6). The court held a hearing on the matter. Defense counsel moved for a mistrial. (Feb. 25, Tr. 4). In the alternative, defense counsel requested a continuance so that he could investigate further and subpoena any additional witnesses. (Feb. 25, Tr. 5). The trial court denied the motion for a mistrial but granted a seven-day continuance. (Feb 25, Tr. 11).

**{¶7}** The trial reconvened a week later. The jury listened to testimony from S.H. and two additional witnesses. The jury found appellant guilty of Counts 1, 3, and 5 and not guilty of Counts 2, 4, and 6. Thus, they found appellant guilty of one count each of sexual battery, unlawful sexual conduct with a minor, and rape.

**{¶8}** The court sentenced appellant to 36 months on Count 1 (sexual battery), 36 months on Count 3 (unlawful sexual conduct with a minor), and 11 years on Count 5 (rape). The court further found that Count 1 and Count 3 merged with Count 5. Thus, appellant's total sentence was 11 years in prison. The court also classified appellant as a Tier III Sex Offender.

**{¶9}** Appellant filed a timely notice of appeal on April 21, 2015. He now raises four assignments of error.

**{¶10}** Appellant's first assignment of error states:

> THE STATE PRESENTED INSUFFICIENT EVIDENCE TO SUPPORT A CONVICTION FOR RAPE BY FORCE OR THREAT OF FORCE.

**{¶11}** Appellant asserts the evidence was insufficient to support his rape conviction. He agrees that he held a "position of authority" in relation to S.H., but asserts that because the alleged rape occurred while S.H. was asleep, his position of authority had no bearing in this matter. Additionally, appellant argues that S.H. was able to get up and leave without his stopping her. And he asserts there was never any evidence of force used or a threat of force on his part.

**{¶12}** Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In essence, sufficiency is a test of adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.* In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a

light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Smith*, 80 Ohio St.3d at 113.

**{¶13}** The jury convicted appellant of rape in violation of R.C. 2907.02(A)(2), which provides: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." The Revised Code defines "force" as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1).

**{¶14}** R.C. 2907.02 only requires that minimal force or threat of force be used in the commission of a rape. *State v. Eskridge*, 38 Ohio St.3d 56, 58, 526 N.E.2d 304 (1988). Moreover, there is coercion inherent in parental authority when a parent sexually abuses his or her child. *Id.* In the case of a parent-child rape, or involving a person who stands in loco parentis, the force does not need to be overt and physical. *Id.*, quoting *State v. Fowler*, 27 Ohio App.3d 149, 154, 500 N.E.2d 390 (8th Dist.1985); *State v. Shadoan*, 4th Dist. No. 03CA764, 2004-Ohio-1756, ¶ 21. Instead, it can be subtle and psychological. *Eskridge*, at 58, quoting *Fowler*. It need only be shown that the rape victim's will was overcome by fear or duress. *Id.* at 59, quoting *Fowler*.

**{¶15}** The evidence at trial was as follows.

**{¶16}** S.H.'s cousin Daniel was the first witness. He testified about the night the police were called. Daniel stated he arrived at his grandfather's trailer at approximately 10:30 p.m. (Feb. 24, Tr. 136). When he arrived, appellant, S.H., Kirsten, Mary, and Blake were in appellant's camper. (Feb. 24, Tr. 136). It appeared to Daniel that they had all been drinking. (Feb. 24, Tr. 136). Daniel told all of the "kids" it was time to go to sleep. (Feb. 24, Tr. 136, 139). He helped them to bed in his grandfather's trailer. (Feb. 24, Tr. 139). Appellant was not in the trailer. (Feb. 24, Tr. 139). S.H. and Mary went to sleep in S.H.'s room. (Feb. 24, Tr. 139). Daniel testified he then heard S.H. shrieking. (Feb. 24, Tr. 139). He went to S.H.'s room

and S.H. told him that "he's been touching me." (Feb. 24, Tr. 140). Daniel stated that it was "common knowledge" who S.H. was referring to. (Feb. 24, Tr. 141). He stated his grandfather then came in the room and they told him what was going on. (Feb. 24, Tr. 140). The grandfather then called the police. (Feb. 24, Tr. 141). They also called Daniel's mother, who is S.H.'s aunt, to come over. (Feb. 24, Tr. 141).

{¶17} Daniel stated that when he went outside, he noticed the RAV vehicle, which appellant normally drove, was missing. (Feb. 24, Tr. 142). The police were there by that time with their lights on. (Feb. 24, Tr. 142). He later saw the RAV return and pull into the garage. (Feb. 24, Tr. 143). Daniel stated that appellant never returned to his grandfather's property. (Feb. 24, Tr. 143).

{¶18} Kirsten was the second witness. She stated that she spent the night at S.H.'s house the night the police came. (Feb. 24, Tr. 154). Before going to bed that night, Kirsten stated that she was drinking with S.H., Mary, Daniel, and appellant in appellant's camper. (Feb. 24, Tr. 156). She stated that she went to sleep in S.H.'s sister's bedroom and woke up later when she heard S.H. crying. (Feb. 24, Tr. 157-158). Kirsten stated she went into S.H.'s room and S.H. said, "Adam [appellant] rapes me." (Feb. 24, Tr. 160).

{¶19} Kirsten also testified about the previous night when she had spent the night at S.H.'s trailer. Kirsten stated that she woke up in the middle of the night and went to S.H.'s room to get her bag. (Feb. 24, Tr. 162). She saw that S.H., Mary, and appellant were all in the bed and appellant had his hands wrapped around S.H.'s leg and S.H.'s foot was inside his pants. (Feb. 24, Tr. 162-163). S.H. was asleep. (Feb. 24, Tr. 164). She asked where her bag was and appellant told her he put it in her car. (Feb. 24, Tr. 163). Kirsten stated she went out to the car and her bag was not there. (Feb. 24, Tr. 163). She went back to S.H.'s room but the door was locked this time. (Feb. 24, Tr. 163). She went back to bed. (Feb. 24, Tr. 163). The next morning, Kirsten stated, she found her bag in S.H.'s room. (Feb. 24, Tr. 163).

{¶20} S.H. was the next witness. S.H. testified that appellant and her mother had been in a relationship for nine years and he was like a father to her. (March 5,

Tr. 9). S.H. stated that in late December 2013, appellant began to sneak into her bedroom. (March 5, Tr. 10). S.H. stated that appellant snuck into her room four or five times from late December 2013 until mid-March 2014. (March 5, Tr. 9-10,13). At the time, she was 14 years old. (March 5, Tr. 25). S.H. testified that appellant was more than ten years older than her. (March 5, Tr. 25).

**{¶21}** The first time, S.H. stated, appellant just rubbed her back while she was sleeping. (March 5, Tr. 10). S.H. woke up and ran to her sister's room. (March 5, Tr. 11).

**{¶22}** The second time appellant came into S.H.'s room, she was again sleeping but this time when she woke up appellant was digitally raping her. (March 5, Tr. 19-20). S.H. testified that appellant stopped when she got up and left the room. (March 5, Tr. 20).

**{¶23}** The third time, S.H. testified she was not feeling well and she fell asleep in the chair in appellant's camper. (March 5, Tr. 21). When she woke up, she was in appellant's bed and he was digitally raping her. (March 5, Tr. 21). S.H. testified she could not wake up completely because she had been drinking alcohol appellant provided and took some Nyquil because she was not feeling well. (March 5, Tr. 21).

**{¶24}** The fourth time, S.H. stated, appellant stated she was asleep in her bedroom with the door locked. (March 5, Tr. 22). She awoke to find appellant digitally raping her again. (March 5, Tr. 22-23). S.H. stated that this was the night that Mary and Kirsten spent the night. (March 5, Tr. 23). This would have been in March 2014. (Feb. 24, Tr. 154).

**{¶25}** S.H. testified that she finally told Mary that appellant had been molesting her a few days later. (March 5, Tr. 23). S.H. said she was scared and wanted it to stop. (March 5, Tr. 23). This occurred on March 16, 2014, according to Daniel's testimony and the police report. (Feb. 24, Tr. 144-145).

**{¶26}** Jennifer Hilderbrand, S.H.'s aunt, testified next. She stated that in March 2014, her father called in the middle of the night and told her that appellant had been touching S.H. (March 5, Tr. 35-36). She went to her father's trailer.

(March 5, Tr. 36). Hilderbrand testified that S.H. grabbed onto her and told her over and over that "he" hurt her. (March 5, Tr. 36). Hilderbrand stated that S.H. was crying, shaking, and could barely catch her breath. (March 5, Tr. 36).

{¶27} Hilderbrand also testified that as she was headed to her father's trailer, she passed appellant driving the RAV in the opposite direction. (March 5, Tr. 40). Later, while she was at her father's trailer, she saw the RAV driving up the road. (March 5, Tr. 41-42). She then saw the RAV pull into the driveway with the headlights off and a man named Dillon got out of the vehicle. (March 5, Tr. 42).

{¶28} Mary was the last witness. She stated that S.H. confessed to her that appellant had been raping her. (March 5, Tr. 61).

{¶29} The indictment charged appellant with raping S.H. "on or about March 7, 2014" (Count 5) and "on or about March 14, 2014" (Count 6). The jury only convicted appellant of Count 5. It acquitted him on Count 6. S.H. testified regarding four instances where she woke up with appellant. She did not give the dates that the alleged rapes occurred. As can be gleaned from the evidence, the fourth instance occurred on March 14, 2014. S.H. stated that the last instance occurred a few nights before she reported appellant's conduct to her friends and family and Daniel agreed that S.H. told him of the abuse on March 16, 2014. (Feb. 24, Tr. 144-145; March 5, Tr. 23). Thus, the jury acquitted appellant of the rape S.H. testified to as the "fourth" time.

{¶30} Although the exact date was not testified to, the parties agree that the basis of Count 5 and appellant's conviction was the "third" instance S.H. testified to, where appellant gave her alcohol and she woke up in his bed. Therefore, in examining whether the evidence was sufficient to support appellant's rape conviction, we must examine S.H.'s testimony regarding the "third" incident.

{¶31} As to the third incident, S.H. testified she was not feeling well and fell asleep in a chair in appellant's camper. (March 5, Tr. 21). When she woke up, she was in appellant's bed and he was digitally raping her. (March 5, Tr. 21). S.H. testified she could not wake up completely to leave because she had been drinking

alcohol and took Nyquil. (March 5, Tr. 21). S.H. did not remember how the incident ended. (March 5, Tr. 22). She said that she fell back asleep. (March 5, Tr. 22).

{¶32} There was sufficient evidence to demonstrate that appellant engaged in sexual conduct with S.H. S.H. testified that she fell asleep and awoke to find appellant's finger inside of her vagina. (March 5, Tr. 21). Whether there was sufficient evidence to support appellant's rape conviction depends on whether the state presented sufficient evidence on the element of "force or threat of force."[1]

{¶33} Construing the evidence in the light most favorable to the prosecution, as we are required to do, the evidence was sufficient to prove the force or threat of force element of rape. Although appellant was not S.H.'s father or step-father, he was a father figure to S.H., who was 14 years old at the time. And because of appellant's position in loco parentis of S.H., S.H. spent time with appellant and lived on the same property as appellant. Thus, without the in loco parentis relationship, appellant would not have been in a position to abuse S.H. On the night of the rape, S.H. was not feeling well. She went to appellant's camper and took some Nyquil. Appellant then provided 14-year-old S.H. with alcohol, which she drank. This made S.H. fall so soundly asleep in a chair in appellant's camper that she did not recall moving, or being moved, to appellant's bed. When S.H. finally awoke in appellant's bed, appellant was digitally raping her. Given the totality of the circumstances, including appellant's relationship with S.H., S.H.'s age, the fact that S.H. had taken Nyquil and appellant provided her with alcohol, and the fact that S.H. fell asleep in a chair and woke up in appellant's bed with no recollection of how she ended up in appellant's bed, the evidence was sufficient to prove that appellant purposely compelled S.H. to submit by force or threat of force.

{¶34} Accordingly, appellant's first assignment of error is without merit.

{¶35} Appellant's second assignment of error states:

---

1 There is another section of the rape statute that provides that no person shall engage in sexual conduct with another who is not the spouse of the offender when the other person's ability to resist or consent is substantially impaired because of a physical or mental condition. R.C. 2907.02(A)(1)(c). And it has been held that a sleeping victim's ability to resist or consent is substantially impaired by the physical condition of being asleep. *State v. Wright*, 9th Dist. No. 03CA0057-M, 2004-Ohio-603, ¶6. The state did not charge appellant under this section.

THE DEFENDANT-APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶36} Here appellant argues that all three of his convictions were against the manifest weight of the evidence. He asserts that the jury convicted him of crimes allegedly committed on March 7, 2014, but none of the witnesses mentioned this date at trial. Appellant states that S.H. seems to have referred to this event as the "third time." He points to S.H.'s cross examination where she was asked if she recalled telling the investigating officers that she was not sexually assaulted, but only woke up in a different room. Appellant also points out that S.H. testified that she had taken Nyquil, consumed alcohol, and could not wake up all the way. He asserts the jury lost its way in convicting based on S.H.'s testimony.

{¶37} In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d at 387. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" *Id*. (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. *Id*. at 390.

{¶38} Yet granting a new trial is only appropriate in extraordinary cases where the evidence weighs heavily against the conviction. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). This is because determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts who sits in the best position to judge the weight of the evidence and the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *State v. Rouse*, 7th Dist. No. 04-BE-53, 2005-Ohio-6328, ¶ 49, citing *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. DeHass*, 10 Ohio St.2d 230,

227 N.E.2d 212 (1967), paragraph one of the syllabus. Thus, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. No. 99-CA-149, 2002-Ohio-1152.

**{¶39}** In addition to rape, the jury also convicted appellant of one count of sexual battery (Count 1) and one count of unlawful sexual conduct with a minor (Count 3).

**{¶40}** The jury convicted appellant of sexual battery in violation of R.C. 2907.03(A)(3), which provides: "No person shall engage in sexual conduct with another, not the spouse of the offender, when * * * [t]he offender knows that the other person submits because the other person is unaware that the act is being committed." And it convicted appellant of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A)(B)(3), which provides: No person who is 18 or older shall engage in sexual conduct with another, not the spouse of the offender, when the offender knows the other person is 13 or older but less than 16, or the offender is reckless in that regard. When the offender is ten or more years older than the victim, unlawful sexual conduct with a minor is a third-degree felony. R.C. 2907.04(B)(3).

**{¶41}** Appellant is correct that no witnesses specifically mentioned the date March 7, 2014, at trial. But testimony as to this specific date was not required.

**{¶42}** "Ordinarily, precise times and dates are not essential elements of offenses." *State v. Sellards*, 17 Ohio St.3d 169, 171, 478 N.E.2d 781 (1985). The date and time of the offense need not be exact, especially in cases involving sexual abuse of children where there are several instances of abuse spread out over an extended time period. *State v. Bolling*, 2nd Dist. No. 20225, 2005-Ohio-2509, ¶ 36. The state must be afforded considerable latitude when it comes to the date of criminal charges involving child rape or sexual assault since a child does not have the temporal memory of an adult and may have difficulty remembering exact dates and times. *State v. Barnhart*, 7th Dist. No. 09 JE 15, 2010-Ohio-3282, ¶ 51.

**{¶43}** The indictment alleges that appellant committed the offenses "on or

about" March 7, 2014. S.H. testified that appellant began abusing her in late December 2013. (March 5, Tr. 9-10). And the testimony demonstrated that the police were contacted on March 16 or 17, 2014. (Feb. 24, Tr. 144-145). Therefore, given the latitude afforded to the state as to the date in this matter, the evidence demonstrated the incident took place during this time, which includes "on or about" March 7, 2014.

**{¶44}** As to the actual offenses, S.H. testified that she fell asleep in a chair in appellant's camper after having taken Nyquil and drinking alcohol provided by appellant. She then awoke in appellant's bed with appellant digitally raping her. There was no evidence contradicting S.H.'s testimony.

**{¶45}** Moreover, S.H. confided in her friend Mary that appellant had been molesting her. S.H. was so upset when she told Mary what appellant had been doing that she began crying loud enough that it caused everyone else in the trailer to go into S.H.'s room to find out what was wrong. Additionally, appellant left the property the night the police were called and never returned. This evidence lends credibility to S.H.'s testimony.

**{¶46}** Given the above evidence and the fact that there was no contradictory evidence, we cannot conclude that the jury clearly lost its way in convicting appellant of rape, sexual battery, and unlawful sexual conduct with a minor.

**{¶47}** Accordingly, appellant's second assignment of error is without merit.

**{¶48}** Appellant's third assignment of error states:

THE TRIAL COURT ERRED IN GIVING A SPECIAL JURY INSTRUCTION IN REGARDS TO THE DEFINITION OF FORCE.

**{¶49}** As to the element of force, the court instructed the jury:

Force means any violence, compulsion or constraint physically exerted by any means upon or against a person or thing. Force of a parent or other authority figure when the relationship between the victim and the

Defendant is one of child and mother's boyfriend who is likened to a step-parent, the element of force need not be openly displayed or physically brutal. It can be subtle, slight or psychological. Evidence of an express threat of harm or evidence of significant physical restraint is not required. If you find beyond a reasonable doubt that under the circumstances in evidence the victim's will was overcome by fear, duress or intimidation the element of force has been proven.

(March 5, Tr. 98-99). Appellant's counsel noted his objection to this instruction. (Tr. March 5, Tr. 108).

{¶50} In this assignment of error, appellant argues the trial court should not have given the jury instruction regarding the defendant holding a position of authority over the victim. He points out that S.H. was asleep during the alleged sexual assault. Therefore, appellant urges, the fact that he may have held a position of authority over S.H. was irrelevant. He notes there was no evidence that he used his position of authority to compel S.H. to submit. He asserts that because S.H. was either sleeping or intoxicated at the time of the alleged assault, his position of authority had no bearing on her.

{¶51} The decision to give a specific jury instruction is within the trial court's discretion. *State v. Barker*, 7th Dist. No. 05-JE-21, 2006-Ohio-1472, ¶ 69. Therefore, we will not reverse absent an abuse of that discretion. Abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's judgment was arbitrary, unreasonable, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶52} Moreover, we must consider the jury instructions as a whole and not view a single portion in isolation. *State v. Jalowiec*, 91 Ohio St.3d 220, 231, 2001-Ohio-26, 744 N.E.2d 163.

{¶53} The Revised Code defines "force" as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A). The court correctly instructed the jury on this definition.

{¶54} Moreover, appellant's relationship with S.H. was important in this case. Without the in loco parentis relationship, S.H. would not have been in a position to be abused by appellant. It was because of that relationship that S.H. was in appellant's camper drinking alcohol that he provided before appellant assaulted her. Thus, the trial court did not abuse its discretion by including an instruction to the jury regarding appellant's position of authority over S.H.

{¶55} Accordingly, appellant's third assignment of error is without merit.

{¶56} Appellant's fourth assignment of error states:

THE TRIAL COURT ERRED BY OVERRULING DEFENDANT'S MOTION FOR A MISTRIAL WHEN IT WAS DISCOVERED THAT DEFENSE COUNSEL DID NOT RECEIVE A STATEMENT TAKEN BY THE INVESTIGATING AGENCY.

{¶57} Finally, appellant argues he was prejudiced by the state's failure to disclose two witness statements prior to trial. He notes that a police officer conducted an "independent investigation." Appellant concedes that the statements were not exculpatory, but argues the statements impacted defense counsel's theory of the case, cross examination of witnesses, and discussions with other witnesses.

{¶58} Sanctions for a discovery violation are within the trial court's discretion. *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 20. Thus, we will not reverse a trial court's discovery violation sanctions unless they constitute an abuse of discretion.

{¶59} In considering what type of sanction to impose when the prosecution commits a discovery violation, the trial court should consider: (1) whether the failure to disclose was willful; (2) whether foreknowledge of the undisclosed material would have benefited the accused in preparing a defense; and (3) whether the accused was prejudiced. *Darmond*, 135 Ohio St.3d at ¶ 35, citing *State v. Parson*, 6 Ohio St.3d 442, 453 N.E.2d 689 (1983), at the syllabus.

{¶60} In this case, Kirsten apparently gave two statements to the police, each

to a different officer. (Feb. 24, Tr. 184-185). But the parties were only in possession of one of the statements. (Feb. 24, Tr. 185).

**{¶61}** At the hearing on the matter, defense counsel agreed that the second statement was taken by a "secondary officer" and this statement was never turned over to the police chief or the prosecutor. (Feb. 25, Tr. 4). As to prejudice, defense counsel agreed the statement was not exculpatory. (Feb. 25, Tr. 8, 9). Instead, he argued appellant was prejudiced because had he had the statement prior to trial, he would have conducted his cross-examination differently and had different discussions with appellant and other witnesses leading up to trial. (Feb. 25, Tr. 8-9).

**{¶62}** The trial court found appellant was not unfairly prejudiced. (Feb. 25, Tr. 11). It made this finding in light of the fact that it granted appellant's motion for a seven-day continuance and granted him the opportunity to subpoena any additional witnesses. (Feb. 25, Tr. 11-12).

**{¶63}** Applying the *Parson* factors, we conclude that the trial court did not act arbitrarily, unreasonably, or unconscionably in denying appellant's motion for a continuance. As to the first factor, the failure to disclose was not willful. The prosecutor learned of the second statement at the same time defense counsel did. As to the second factor, the trial court remedied the situation where the undisclosed material may have benefited appellant in preparing a defense. The court granted appellant a seven-day continuance of the trial to conduct any research and permitted him to subpoena any additional witnesses he thought he might need. As to the third factor, appellant admitted the evidence was not exculpatory. So he was not prejudiced in this regard. And any prejudice he may have suffered as a result of his counsel being caught off guard by the undisclosed statement was remedied by the court's continuance of trial and permission to subpoena additional witnesses. Therefore, the trial court did not abuse its discretion in denying appellant's motion for a mistrial.

**{¶64}** Accordingly, appellant's fourth assignment of error is without merit.

**{¶65}** For the reasons stated above, the trial court's judgment is hereby

affirmed.

Waite, J., concurs.

Robb, J., concurs.