[Cite as *State v. Moore*, 2022-Ohio-2349.]

COURT OF APPEALS
MORGAN COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Earle E. Wise, Jr., P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | |
| WESLEY MOORE | : | Case No. 21AP0003 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Court of Common
                             Pleas, Case. No. 20CR26


JUDGMENT:                    Reversed


DATE OF JUDGMENT:            July 5, 2022


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

MARK HOWDYSHELL                           BRIAN W. BENBOW
109 E. Main Street                        265 Sunrise Center Drive
McConnelsville, OH  43756                 Zanesville, OH  43701

*Wise, Earle, P.J.*

{¶ 1}   Defendant-appellant Wesley Moore appeals the June 30, 2021 sentencing judgment entry of the Morgan County Court of Common Pleas sentencing him to 17 months incarceration following a conviction for one count of gross sexual imposition. Plaintiff-appellee is the state of Ohio.

Facts and Procedural History

{¶ 2}   On September 4, 2018, 16-year-old Z.M. and some of her younger siblings stayed the night at their aunt K.M.'s house. At that time, K.M and appellant lived together. The two had been in a relationship for 12 years and have a child in common. Appellant had been around for most of Z.M.'s life and she viewed him as an uncle.

{¶ 3}   On the evening of September 4, 2018, after doing some crafts with appellant and her siblings, Z.M. and her brother C.M. went to the living room and went to sleep. Z.M. fell asleep on the sofa and C.M. on the floor. Two of her other siblings were already asleep together in a recliner in the same room. Z.M. slept in a t-shirt, shorts, and snug-fitting underwear.

{¶ 4}   Sometime later, Z.M. woke up to find appellant sitting in the recliner next to the sofa. She asked appellant what he was doing and he replied he was just watching a movie. Z.M. rolled over onto her stomach to escape the light of the television and went back to sleep.

{¶ 5}   Z.M. next awoke to the feeling of appellant's hand on the back of her thigh and moving up towards her buttocks. Appellant then groped Z.M.'s buttocks, put his hand under her shorts and underwear, and touched her vaginal area. Without saying anything

to appellant. Z.M. got up, grabbed her phone and went to the bathroom. She noticed the time was 3:47 a.m.

{¶ 6} Z.M. was frightened and confused because she could not understand why someone who was supposed to protect her would do such a thing. She stayed in the bathroom for two hours. When she finally came out appellant said "I'm sorry if I hurt you." A short time later, the children's stepmother arrived and took them home.

{¶ 7} Z.M. did not tell anyone what happened for two weeks. She then told her sister, stepmother and her father. When she did tell them, she left out the fact that appellant touched her bare skin because she feared her father would physically assault appellant. Her father did not prompt her to tell law enforcement because he felt if he talked to K.M. and appellant was no longer living with K.M., things did not need to go that far. When that did not happen, in March 2019 Z.M. discussed the matter with law enforcement. She told law enforcement the entire story – that appellant touched her bare skin under her clothing.

{¶ 8} After advising law enforcement of the assault, Z.M. received a Facebook Messenger video call from appellant. Appellant was lying on the floor with a shotgun and his daughter standing in a doorway directly behind him. Appellant was crying and kept repeating he would die before he would go to prison. Z.M. hung up.

{¶ 9} Appellant also contacted Z.M.'s father B.M. through Facebook Messenger. Appellant sent a message to B.M. on September 19, 2018 apologizing for his behavior. On January 24, 2019 appellant sent B.M. a message telling B.M. he would not be attending a family function out of respect for B.M. and his family, and also asking B.M. to direct any anger towards him and not K.M.

{¶ 10} Appellant was subsequently charged with one count of gross sexual imposition in violation of R.C. 2907.05(A)(1), a felony of the fourth degree. Appellant pled not guilty and the matter proceeded to a one-day jury trial on April 22, 2021.

{¶ 11} The state presented testimony from Z.M. and her father B.M., setting forth the above outlined facts. The state then rested. Counsel for appellant did not move for acquittal pursuant to Crim.R. 29 after the state rested nor after the defense rested. Appellant presented no evidence. Neither the state nor counsel for appellant requested a jury instruction for the lesser-included offense of sexual imposition. Following deliberations, the jury found appellant guilty as charged.

{¶ 12} Appellant filed an appeal and the matter is now before this court for review. Appellee has not filed a response brief. Appellant sets forth three assignments of error as follow:

I

{¶ 13} "APPELLANT'S CONVICTION FOR GROSS SEXUAL IMPOSITION WAS AGAINST BOTH THE WEIGHT AND SUFFICIENCY OF THE EVIDENCE IN VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 1 & 16 OF THE OHIO CONSTITUTION."

II

{¶ 14} "THE TRIAL COURT DEPRIVED APPELLANT OF A FAIR TRIAL IN VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE 1, SECTION 1 & 16 OF THE OHIO CONSTITUTION AS FOLLOWS:

1.   BY PERMITTING THE STATE TO REFER TO APPELLANT AN "ANIMAL" DURING CLOSING ARGUMENT;

2. BY PERMITTING THE INTRODUCTION OF ALLEGED FACEBOOK SCREEN SHOTS AND VIDEOS AND BY ALLOWING THE SAME TO BE INTRODUCED TO THE JURY VIA TESTIMONY WITHOUT PROPER AUTHENTICATION;

3. BY PERMITTING THE ALLEGED VICTIM'S FATHER TO GIVE A VICTIM IMPACT STATEMENT IN FRONT OF THE JURY IN ORDER TO IMPROPERLY ATTEMPT TO REHABILITATE THE ALLEGED VICTIM'S PRIOR INCONSISTENT STATEMENT."

III

{¶ 15} "THE TRIAL COURT ABUSED ITS DISCRETION BY ORDERING A $2,500.00 FINE WITHOUT FIRST CONSIDERING APPELLANT'S ABILITY TO PAY AFTER IMPOSING A LENGTHY PRISON SENTENCE."

I

{¶ 16} In his first assignment of error, appellant argues his conviction for gross sexual imposition is against the manifest weight and sufficiency of the evidence. We agree.

Standard of Review

{¶ 17} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99

S.Ct. 2781, 61 L.Ed.2d 560 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997).  The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

## The Conviction

{¶ 18} Appellant was convicted of one count of gross sexual imposition pursuant to R.C. 2907.05(A)(1) That section provides in relevant part:

> No person shall have sexual contact with another, not the spouse of
> the offender * * * when * * *:
> (1)    The offender purposely compels the other person * * * to
> submit by force or threat of force.

{¶ 19} R.C. 2907.01(B) defines "Sexual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."

{¶ 20} The term "force" is defined by R.C. 2901.01(A)(1) as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." "[T]he use of the word 'any' in the definition recognizes there are different degrees of force." *State v. Clark*, 8th Dist. Cuyahoga No. 90148, 2008-Ohio-3358, ¶ 17. " '[S]ome amount of force must be proven beyond that force inherent in the crime itself.' " *State v. Zimpfer*, 2d Dist. Montgomery No. 26062, 2014-Ohio-4401, ¶ 46, citing *State v. Dye*, 82 Ohio St.3d 323, 327, 695 N.E.2d 763 (1998).

## The Evidence

{¶ 21} Z.M testified that at the time of the sexual assault, she had known appellant for 12 years and he was like an uncle to her. Transcript of trial (T.) at 108. Appellant and Z.M.'s paternal aunt K.M. lived together and have a child in common. T. 108-109. Z.M. and her siblings would often stay the night with appellant and K.M. They did so on the evening/morning in question, September 4 and 5, 2018. T. 109-111. Z.M. routinely slept on the sofa during these sleepovers and she slept there that evening. T. 113, 115-116. She woke once to appellant in the room. She asked what he was doing and he told her he was just watching a movie. T. 118. Z.M. rolled onto her stomach and went back to sleep. T. 119. She recalled she was wearing a white t-shirt, gray shorts, and form-fitting underwear. T. 119-120.

{¶ 22} Z.M. woke a second time shortly before 4:00 a.m because appellant had his hand on the back of her thigh. She testified:

> When I wake, I am woken by [appellant] rubbing the back of my leg.
> It had to be his left hand by the way he was sitting when I stood. He

then went from his hand position like this, and without hesitation, turning his hand and forcing his thumb under my panties and onto my vagina. * * * I got up and went to the bathroom after checking my phone. It had been 3:47 I the morning. When I went to the bathroom it was dark. When I came back out, it was daylight, and his exact words to me were, I'm sorry if I hurt you.

{¶ 23} T. 117.

{¶ 24} Z.M. further testified it was what appellant was doing that caused her to get up and leave the room. T. 140.

### Lack of a Crim.R 29 Motion

{¶ 25} It bears mention that counsel for appellant failed to move for acquittal either at the at the close of state's evidence or after the defense rested. T. 164. While this in no way curtails our consideration of appellant's sufficiency argument, see *State v. Jones*, 91 Ohio St.3d 335, 346, 744 N.E.2d 1163 (2001), best practice weighs in favor of making the motion at the appropriate times.

### Appellant's Arguments

{¶ 26} We must first note that in his brief appellant argues Z.M. slept through the assault. Appellant's brief at 6. The record, however, does not support appellant's argument. Z.M. woke up because appellant was rubbing the back of her leg. T. 117. She was therefore awake when she was assaulted. However, the assault occurred very quickly after Z.M. awoke, in her words "instantly." T. 120.

{¶ 27} Next, appellant makes two sufficiency arguments. He first argues the record is devoid of any evidence of sexual arousal or gratification. We disagree. It is well settled that in the absence of direct testimony regarding sexual arousal or gratification, the trier of fact may infer that the defendant was motivated by desires for sexual arousal or gratification from the type, nature, and circumstances of the contact, along with the personality of the defendant. *State v. Cobb*, 81 Ohio App.3d at 185, 610 N.E.2d 1009 (1991).

{¶ 28} Here, the jury could properly infer that because there was no legitimate reason for a grown man to put his hand under his 16-year-old niece's shorts and underwear in order to touch her vagina, that appellant's actions were carried out for purposes of sexual arousal or gratification. Appellant's later apology to Z.M. further supports such an inference. We therefore reject appellant's argument.

{¶ 29} Appellant next argues the state failed to prove appellant compelled Z.M. to submit to sexual contact by force or threat of force. We agree.

Proof of Force for GSI When the Victim is a Minor Child

{¶ 30} As outlined above, R.C. 2907.05 (A)(1) requires the victim's submission to sexual contact to be obtained by force or threat of force. The force element needed to prove the offense of gross sexual imposition is the same as it is for rape. *State v. Riggs*, 10th Dist. Franklin Nos. 04AP-1279, 04AP1280, 2005-Ohio-5244 ¶120. To obtain a conviction pursuant to the section charged the state was required to prove the will of Z.M. was overcome by fear or duress. *State v. Eskridge*, 38 Ohio St.3d 56, 58-59, 526 N.E.2d 304 (1988). In *Eskridge*, the Supreme Court of Ohio found the amount of force required to meet that requirement varies depending on the age of the victim and the relationship

between the victim and the defendant. *Id.* at ¶ 58. The court held that when the relationship is one of parent and a minor child "[f]orce need not be overt and physically brutal, but can be subtle and psychological." *Id.* In *State v. Dye*, 82 Ohio St.3d 323, 328-329, 695 N.E.2d 763 (1988) the court extended this holding to situations where an adult defendant holds a position of authority over a minor child victim.

{¶ 31} In this matter, appellant held a position of authority over Z.M. She considered him her uncle and he had been in her life for 12 years. Our task then becomes to determine if manipulation of Z.M.'s clothing is sufficient to prove force under the facts of this case.

{¶ 32} Generally, the Eighth District, regardless of the age of the victim, has held that the manipulation of an initially sleeping victim's clothing in order to facilitate sexual conduct or contact constitutes force under R.C. 2901.01(A)(1) even though such force requires only minimal physical exertion. See, e.g., *State v. Clark*, Cuyahoga App. No. 94207, 2010-Ohio-5010, ¶ 23, citing *State v. Sullivan* (Oct. 7, 1993), Cuyahoga App. No. 63818 (Sleeping 12-year-old's pants and underwear pulled down to facilitate cunnilingus); *State v. Graves*, Cuyahoga App. No. 88845, 2007-Ohio-5430 (26-year-old's pants pulled down and legs separated to facilitate vaginal intercourse); *State v. Lillard* (May 23, 1996), Cuyahoga App. No. 69242, 1996WL273781 (Appellant pulled up the sleeping 16-year-old victim's robe and spread her legs in order to look into her vagina with a flashlight).

{¶ 33} In *State v, Byrd*, 8th Dist. Cuyahoga No. 82145, 2003-Ohio-3958, however, the Eighth District found the state failed to produce sufficient evidence of force where the defendant touched the 15-year-old victim's genitals over her clothing and the victim discovered the defendant's actions as she awoke. The court found "[t]here was no

evidence that the defendant applied any force in relation to her body and/or clothing, and we therefore conclude, viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could not have found the essential element of force proven beyond a reasonable doubt." *Id.* ¶ 25. In the same case, however, the court found the defendant's acts of placing the legs of a second 14-year-old victim in his lap and touching her vaginal area under her clothing as she awoke was sufficient to establish the element of force.

{¶ 34} *State v. Green*, 5th Dist. No. 01CA-A-12-067, 2002-Ohio-3949 involved the rape of a 16-year-old victim by Green. Green gave the victim alcohol and she later fell asleep a chair in the basement of Green's home. The victim awoke to find herself on the floor with appellant on top of her engaging in vaginal intercourse. Her pants and underwear had been pulled down around her ankles. Green was convicted of rape and on appeal argued the state failed to prove force or threat of force. This court found Green's relocation of the victim's body from the chair to the floor and his act of pulling down her underwear and pants sufficient to establish force. *Id.* ¶ 60.

{¶ 35} In *State v. Johnson*, 2d Dist. No. 2009-CA-38, 2010-Ohio-2920, a 16-year-old victim awoke positioned on her stomach with Johnson on top of her and holding her down. He had pulled her shorts and underwear aside, and was engaging in vaginal intercourse with her. The victim told Johnson to stop, but he did not. She briefly struggled to get away from Johnson and was eventually able to elbow him off of her. *Id.* ¶ 4. On appeal, Johnson argued the state had failed to prove the element of force. The Second District Court of Appeals disagreed finding Johnson had moved the victim's underwear and shorts aside, held her down with his hand on her back, failed to stop when the victim

asked him to, and did not stop until the victim elbowed him off of her and onto the floor, evidence sufficient to prove force. *Id.* ¶ 19.

{¶ 36} In *State v. H.H.* 10th Dist. No.10AP-1126, 2011-Ohio-6660, H.H was staying in a hotel with his 17-year-old granddaughter P.W. The two agreed she would sleep on the sofa and H.H. would sleep on the bed. Before bed, P.W. took medication which made her very sleepy. After falling asleep on the sofa P.W. later awoke to find herself in the bed, her underwear and pants removed, and H.H. engaging in vaginal intercourse with her. P.W. tried to pull away but H.H. restrained her and told her to wait. H.H. appealed his subsequent rape conviction arguing the state failed to prove the element of force. The Tenth District Court of Appeals disagreed finding H.H.'s act of carrying his sleeping granddaughter's body to the bed and removing her pants and underwear sufficient to constitute force.

{¶ 37} While not a case involving a minor, the Third District Court of Appeals in *State v. Wine*, 3d Dist. Auglaize No. 1-12-01, 2012-Ohio-2837, discussed the degree of force required to prove force in cases involving a minor victim. The court rejected the Eighth District's reduced level of force findings:

> We decline to adopt the Eighth District's reduced level of force for sleeping victims for several reasons. To begin with, the reasoning in the Eighth District's line of cases stems from *Eskridge* where the victim was the offender's four-year-old daughter. The Ohio Supreme Court has limited the application of *Eskridge*'s reduced levels of force to situations where the offender is the victim's parent or holds a

similar position of authority over a child-victim. *Schaim*, 65 Ohio St.3d at 55, 600 N.E.2d 661; *Dye*, 82 Ohio St.3d at 329, 695 N.E.2d 763. Other districts that have applied a reduced level of force for sleeping victims have done so only in cases involving child-victims. *State v. Johnson*, 2nd Dist. No.2009-CA-38, 2010-Ohio-2920, ¶ 18 (16 year-old); *State v. Burton*, 4th Dist. No. 05CA3, 2007-Ohio-1660, ¶ 38 (10-13 years old); *State v. Green*, 5th Dist. No. 01CA-A-12-067, 2002-Ohio-3949, ¶ 61 (16 year-old); *State v. H.H.*, 10th Dist. No. 10AP–1126, 2011-Ohio-6660, ¶ 12 (17 year-old); *State v. Rutan*, 10th Dist. No. 97APA03-389 (Dec. 16, 1997), (14-15 year-olds). The Eighth District's focus upon "force necessary to facilitate the act" also ignores the fact that "the statute requires that some amount of force must be proven beyond that force inherent in the crime itself." *Clark*, 2008-Ohio-3358, at ¶ 17; *Dye*, 82 Ohio St.3d at 327, 695 N.E.2d 763. The statute requires that the victim submit to the sexual contact by force or threat of force. R.C. 2907.05(A)(1). This requires more than "force necessary to facilitate the act" but force or threat of force sufficient to overcome the will of the victim. *Eskridge*, 38 Ohio St.3d at 58-59, 526 N.E.2d 304.

Since the Eighth District's interpretation of the element of force in sleeping-victim cases "fails to recognize the requirement that the force or threat of force must be sufficient to overcome the will of the victim," it blurs the distinction between sex offenses requiring force

and sex offenses not requiring force. *State v. Henry*, 3d Dist. No. 13-08-10, 2009-Ohio-3535, ¶ 32. The General Assembly has provided specific criminal offenses to protect victims, like S.D., "whose ability to resist * * * is substantially impaired because of a * * * physical condition" or who submit because they are "unaware that the act is being committed." See R.C. 2907.02(A)(1)(c); 2907.05(A)(5); 2907.03(A)(3). The Court of Appeals has concluded that sleeping is a 'physical condition' that substantially impairs a victim's ability to resist for purposes of rape in violation of R.C. 2907.02(A)(1)(c). *Graves*, 2007-Ohio-5430, at ¶ 22, citing *State v. Younger*, 8th Dist. No. 86235, 2006-Ohio-296; *State v. Wright*, 9th Dist. No. 03CA0057-M, 2004-Ohio-603, ¶ 6; *H.H.*, 2011-Ohio-6660, at ¶ 10. For the same reason, an offender may also be convicted of committing gross sexual imposition against a sleeping victim under R.C. 2907.05(A)(5). See *id*. Similarly, an offender may be convicted of committing sexual battery or sexual imposition against a sleeping victim under R.C. 2907.03(A)(2), (3) or R.C. 2907.06(A)(3). *Henry*, 2009-Ohio-3535, at ¶ 33, citing *State v. Lindsay*, 3d Dist. No. 8-06-24, 2007-Ohio-4490; *State v. Antoline*, 9th Dist. No. 02CA008100, 2003-Ohio-1130; Wright, 2004-Ohio-603; *State v. Byrd*, 8th Dist. No. 82145, 2003-Ohio-3958, ¶ 23. By diminishing R.C. 2907.05(A)(1)' s element of force to mere manipulation of a sleeping victim's body or clothing, the Eighth District usurps the General Assembly's power to

define and codify criminal offenses and to treat offenders differently depending upon the nature of their conduct.

{¶ 38} Against that background, even if we were to adopt the Eighth District's reduced level of force for initially sleeping victims, we find the facts here are distinguishable from any of the above-mentioned sleeping child-victim cases which appear to require manipulation of clothing plus something more, such as relocation of the victim or repositioning of the victim's limbs. While appellant did manipulate Z.M.'s clothing, as soon as Z.M. became aware of the nature of appellant's conduct, she got up and left the room. T. 140. Appellant did not tell Z.M. to do or refrain from doing anything, did not restrain her in any way nor reposition or relocate her body in any way, and did not prevent Z.M. from leaving the room. He did not hold Z.M. down in order to commit the act of touching Z.M. While we find appellant's conduct despicable, we nonetheless find the evidence presented by the state insufficient to prove force or threat of force. Additionally, while appellant's conduct would meet the elements of gross sexual imposition under R.C. 2907.05(A)(5) or sexual imposition pursuant to R.C. 2907.06(A)(1), the state did not charge under these code sections nor request to amend the indictment nor request a jury instruction for the lesser-included offense of sexual imposition.

{¶ 39} Appellant's first assignment of error is sustained.

## II, III

{¶ 40} Given our resolution of the first assignment of error, appellant's remaining assignments of error are moot.

{¶ 41} The judgment of the Morgan County Court of Common Pleas is reversed and appellant's conviction is vacated.

By Wise, Earle, P.J.

Wise, John, J. and

Delaney, J. concur.

EEW/rw