JOURNAL ENTRY AND OPINION *Page 2 
{¶ 1} Appellant Jason Clark appeals his convictions for four counts of rape and his classification as a sexual predator. He assigns the following errors for our review:
 "I. The trial court erred in denying appellant's motion for acquittal as to the charges when the state failed to present sufficient evidence to sustain a conviction."
 "II. Appellant's conviction is against the manifest weight of the evidence."
 "III. The trial court erred when it classified appellant as a sexual predator."
 {¶ 2} Having reviewed the record and pertinent law, we affirm Clark's convictions and sexual predator classification. The apposite facts follow.
 {¶ 3} Clark was indicted for two counts of rape by force or threat of force and two counts of rape while the victim was substantially impaired by reason of a mental or physical condition. The rape charges arose out of conduct on two different dates.
 Jury Trial {¶ 4} The victim lived with her sister, her sister's infant son, and the victim's infant daughter. The victim's sister was dating Clark; Clark was also the father of the sister's son. The victim's daughter was not related to Clark. Clark moved in with the women in April 2006 after he was released from prison.
 {¶ 5} The victim was 19 years old at the time of the rapes. She testified she had known Clark for seven years as he was from the neighborhood and dated her *Page 3 
older sister. Near the end of June, the victim had enrolled in a nine week program to become a manicurist. This required her to attend classes from 9:00 a.m. to 5:00 p.m. every day. She then worked until 3:00 a.m. at a nearby restaurant. She stated that when she did eventually go to sleep at night, she was so exhausted, she slept deeply.
 {¶ 6} Several days after July 4, 2006, she was in a deep sleep, when she was awakened by a finger in her vagina. She saw Clark sitting on her bed. She told him it was wrong to touch her and asked what he was doing in her room. He walked out of the room without saying anything. She was wearing a nightgown and underwear that Clark had to move in order to commit the sexual act. The next morning she felt scared, violated, and ashamed; therefore, she did not tell anybody what had occurred.
 {¶ 7} Clark violated the victim again sometime around mid August 2006. The victim was in a deep sleep when she felt her pajama bottoms tightening and twisting. She then felt a fingernail in her vagina. When she awoke, Clark was sitting on her bed with his hand on her vagina. The victim told him that what he was doing was wrong and asked him "why he was doing this." He walked out of the room without replying.
 {¶ 8} The victim did not tell her sister immediately about the incidents because she was scared. However, she eventually told her sister, who then *Page 4 
confronted Clark. He told the sister that "this go way back," and that the victim had liked him for a long time. The sister stated she had seen Clark come out of the victim's room on two occasions. When she questioned Clark, he told her he was turning off the television and adjusting the victim's covers. She suspected something was wrong with the victim because she had become introverted, moody, and her hair was falling out.
 {¶ 9} After the confrontation, Clark was kicked out of the home. However, he continued to walk past the sisters' house and taunted the victim by stating that he did nothing wrong and that nothing was going to happen to him.
 {¶ 10} Around the second week of September, the victim's family confronted Clark as he walked past the house. When the family asked why he abused the victim, Clark responded, "If she laying in the bed naked, I'm in there." After this confrontation, the family called the police to report the sexual conduct against the victim.
 {¶ 11} Detective James McPike took the sisters' written statements and also took Clark's statement. Clark denied touching the victim and stated that the victim had a crush on him and that they had kissed before.
 {¶ 12} The jury found Clark guilty of all four counts of rape. The trial court sentenced Clark to four years on each rape count, but merged the counts for each date. The court ordered the terms for each date to be served consecutively, *Page 5 
resulting in a total sentence of eight years. The trial court also classified Clark as a sexual predator.
 Insufficient Evidence {¶ 13} In his first assigned error, Clark contends the evidence was insufficient to convict him of rape because there was no evidence he forced or threatened the victim because she was asleep when he touched her. He also argues that there was no evidence that a condition caused her to be substantially impaired to consent or resist. We disagree.
 {¶ 14} The sufficiency of the evidence standard of review is set forth in State v. Bridgemar[1] as follows:
 "Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."[2]
 {¶ 15} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks,[3] in which the Ohio Supreme Court held: *Page 6 
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)"
 {¶ 16} Under counts one and three of the indictment, Clark was indicted for rape pursuant to R.C. 2907.02(A)(2), which provides: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
 {¶ 17} The record shows that on the two occasions that Clark inserted his finger into the victim's vagina, he had to manipulate her clothing to engage in the act. This court has held on several occasions that the manipulation of a sleeping victim's clothing in order to facilitate sexual conduct constitutes force.[4] In these cases, we recognized that R.C. 2901.01(A)(1) defines force as "any violence, compulsion, or constraint physically exerted by any means upon or against a person." (Emphasis added.) We noted the use of the word "any" in the definition recognizes there are different degrees of force. In the situation where the victim is *Page 7 
sleeping and thus not aware of the defendant's intentions, only minimal force is necessary to facilitate the act.
 {¶ 18} In State v. Graves, upon waking the victim found her pants and underwear pulled down to her knees and a wet substance on her thighs, shirt, and seat. In State v. Simpson, the defendant manipulated the sleeping victim's clothing and body to make the victim accessible for anal sex. In State v. Lillard, the victim awoke to find her covers removed, her robe and legs opened, and the defendant looking at and feeling her vagina. In State v. Sullivan, the victim awoke to find her underwear pulled down and the defendant performing oral sex on her.
 {¶ 19} Likewise, in the instant case, the victim was awakened to find her clothing was manipulated and Clark's finger inside her vagina. Given these circumstances and prior case law, we conclude the element of force was established.
 {¶ 20} Clark was also indicted for two counts of rape pursuant to R.C. 2907.02(A)(1)(c), which provides:
 "[n]o person shall engage in sexual conduct with another * * * when * * * [t]he other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * * and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired * * *."
 {¶ 21} In the instant case, the victim was awakened each time from a deep sleep by Clark inserting his finger into her vagina. This court has held that sleep *Page 8 
constitutes a mental or physical condition that substantially impairs a person from resisting or consenting to sexual conduct.[5] When a person is asleep, he or she is not in a mental condition to resist or consent to the sexual conduct. Therefore, sufficient evidence was presented in support of Clark's convictions pursuant to R.C. 2907.02(A)(1)(c). Accordingly, Clark's first assigned error is overruled.
 Manifest Weight of the Evidence {¶ 22} In his second assigned error, Clark contends his convictions for rape were against the manifest weight of the evidence. We disagree.
 {¶ 23} In State v. Wilson,[6] the Ohio Supreme Court recently addressed the standard of review for a criminal manifest weight challenge, as follows:
 "The criminal manifest-weight-of-the-evidence standard was explained in State v. Thompkins (1997), 78 Ohio St.3d 380, 1997 Ohio 52, 678 N.E.2d 541. In Thompkins, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. Id. at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. Id. at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. Id. at *Page 9 387, 678 N.E.2d 541. `When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony.' Id. at 387, 678 N.E.2d 541, citing Tibbs v. Florida (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652."
 {¶ 24} However, an appellate court may not merely substitute its view for that of the jury, but must find that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."[7] Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction."[8]
 {¶ 25} Clark contends the victim was not credible because there was no physical evidence or eyewitness to corroborate her testimony. Because of the nature of the rape, it is not surprising that there was no physical evidence of the rape. It is also not surprising that no one witnessed the rapes, as they happened in the victim's bedroom during the night.
 {¶ 26} Clark contends the victim was not credible because she waited to tell her sister about the rapes, and that although she said she screamed, her sister did not hear her. The victim explained that she did not tell her sister immediately *Page 10 
because she was scared and ashamed. Although she did scream during the second assault, she stated she was not sure how loud she screamed.
 {¶ 27} Clark also notes that the victim only told the officer about one of the incidents; she could not remember the exact dates of the abuse; and, Clark voluntarily gave a statement to the police. The victim admitted that when the officer asked her when the rape occurred, she only gave him the approximate date of the most recent attack. However, she stated she meant to tell him it occurred twice. This inconsistency in her testimony was for the jury to resolve.
 {¶ 28} Also, although the victim could not remember the exact dates, she could give an approximate date based on the fact the first incident occurred after July 4, and the second occurred after her aunt's death in August. Moreover, various family members testified that the victim's demeanor had changed drastically during this time. She was normally outgoing, happy, and conscientious about her appearance. During this time she became very introverted, moody, careless about her appearance, and her hair was falling out. We cannot conclude the jury lost its way in finding Clark guilty of raping the victim. Clark's second assigned error is overruled.
 Sexual Predator Classification {¶ 29} In his third assigned error, Clark argues the trial court erred by classifying him as a sexual predator because the state failed to present clear and *Page 11 
convincing evidence that he was likely to commit future sexual crimes. We disagree.
 {¶ 30} The Ohio Supreme Court has recently held the applicable standard of review for a sexual-predator classification is the civil manifest-weight-of-the-evidence standard.[9] Under this standard, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court.[10] The factual findings are presumed to be correct since the trial court is in the best position to determine credibility.[11] This court may not reverse a sexual-predator classification "simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court."[12]
 {¶ 31} In Wilson, the Court outlined the proper procedure that an appellate court must undertake when reviewing a decision classifying a criminal defendant as a sexual predator. The court must "evaluate * * * the trial judge's rationale [and] any of the evidence the judge cited in support of his decision * * *."[13] In so doing, the *Page 12 
court must bear in mind that "[m]ere disagreement with the trial court's findings is not sufficient to overturn them."[14] After such a review, the court must affirm the classification if there is some competent, credible evidence that goes to each of its essential elements.
 {¶ 32} When deciding whether a defendant is a sexual predator, the trial court is to consider the non-exhaustive list of criteria set forth in R.C. 2950.09(B)(3). However, a trial court is not required to find a specific number of factors under R.C. 2950.09(B)(3) before it can adjudicate an offender a sexual predator, so long as its determination is grounded upon clear and convincing evidence.[15] Moreover, R.C. 2950.09(B) does not require that each factor be met; it simply requires the trial court to consider those factors that are relevant.[16]
 {¶ 33} In the instant case, the trial court cited the following factors in determining that Clark was a sexual predator: (1) he received a score on the Static-99 test indicating he was in the medium to high risk category for reoffending; (2) he is younger than 25 years old; (3) his history of prior offenses both as an adult and juvenile indicated a significant risk of recidivism; (3) he has never been married or been in a committed relationship for more than two years; (4) the victim lived in the *Page 13 
same house as he did; (5) the victim was his son's aunt; (6) he has had at least 50 sexual partners since he became sexually active at the age of 12; and, (7) he failed to take the charges against him seriously.
 {¶ 34} These findings support the trial court's classifying Clark as a sexual predator. Although Clark claims the fact he has had many sexual partners and has not been in a stable relationship do not indicate he would be likely to reoffend, these circumstances are considered risks by psychologists when conducting the Static-99 test. Our review is limited to determining whether some competent, credible evidence supports the elements of the trial court's classification; therefore, because such evidence was relied upon by the trial court, we conclude the trial court did nor err by classifying Clark as a sexual predator. Accordingly, Clark's third assigned error is overruled.
 Ineffective Indictment {¶ 35} Clark also claims in his notice of supplemental authority and at oral argument, that the Ohio Supreme Court case of State v.Colon[17] applies to this case. In Colon, the court held:
 "When an indictment fails to charge a mens rea element of a crime and the defendant fails to raise that defect in the trial court, the defendant has not waived the defect in the indictment." *Page 14 
 {¶ 36} Clark's indictment for the two counts of rape pursuant to R.C. 2907.02(A)(1)(c) states:
 "The jurors of the Grand Jury of the State of Ohio * * * do find and present, that the above named Defendant(s), on or about the date of the offense set forth above, in the County of Cuyahoga, unlawfully engaged in sexual conduct with Jane Doe, not his spouse, and the ability of Jane Doe to resist or consent was substantially impaired because of a mental or physical condition, and Jane Doe knew or had reasonable cause to believe that Jane Doe's ability to resist or consent was substantially impaired because of a mental or physical condition." (Emphasis added).
 {¶ 37} Clark contends because the indictment incorrectly reads that "Jane Doe knew or had reasonable cause to believe" that Jane Doe was "substantially impaired because of a mental condition," that the indictment failed to charge the mens rea for rape. We disagree.
 {¶ 38} This error was obviously a typographical error because Clark is identified in the indictment as the perpetrator. Moreover, the indictment clearly sets forth the mens rea of the crime. The error is the fact that the indictment names the victim instead of the defendant as possessing the mens rea. However, the name of the defendant is not an element of the offense; thus, the typographical error does not constitute a structural error because it did not alter the name or identity of the crime *Page 15 
charged. The indictment, therefore, could be amended by the court pursuant to Crim. R. 7(B) to correct the error.[18]
 {¶ 39} In fact, prior to trial, the prosecutor noticed the typographical error and moved to amend the indictment on the record to reflect, "Jason Clark" instead of "Jane Doe."[19] The name of Jason Clark was then inserted in the indictment. Clark's defense counsel stated he had no objection to the amendment.[20] Therefore, this is not a case where the indictment contained a structural defect or a case where the defect was not raised or corrected in the trial court. Therefore, we conclude the holding of Colon is inapplicable to this case.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 16 
CHRISTINE T. McMONAGLE, P.J., and ANN DYKE, J., CONCUR
[1] (1978), 55 Ohio St.2d 261, syllabus.
[2] See, also, State v. Apanovitch (1987), 33 Ohio St.3d 19, 23;State v. Davis (1988), 49 Ohio App.3d 109, 113.
[3] (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
[4] State v. Graves, Cuyahoga App. No. 88845, 2007-Ohio-5430;State v. Simpson, Cuyahoga App. No. 88731, 2007-Ohio-5944 at ¶ 50;State v. Lilliard (May 23, 1996), Cuyahoga App. No. 69242; State v.Sullivan (Oct. 7, 1993), Cuyahoga App. No. 63818.
[5] State v. Graves, supra; State v. Younger, Cuyahoga App. No. 86235,2006-Ohio-296.
[6] 113 Ohio St.3d 382, 2007-Ohio-2202.
[7] State v. Thompkins, supra at 387.
[8] Id.
[9] State v. Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202.
[10] Id. at]}24, citing C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279.
[11] Id., citing Seasons Coal Co., Inc. v. Cleveland (1984),10 Ohio St.3d 77, 80-81.
[12] Id.
[13] Id. at ¶ 26.
[14] Id.
[15] State v. Purser, 153 Ohio App.3d 144, 149, 2003-Ohio-3523.
[16] State v. Grimes (2001), 143 Ohio App.3d 86, 89.
[17] 118 Ohio St.3d 26, 2008-Ohio-1624.
[18] Colon at ¶¶ 25 and 26.
[19] Tr. 12.
[20] Tr. 13. *Page 1