[Cite as *State v. Hartman*, 2018-Ohio-2641.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 105159**

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**MITCHELL HARTMAN**

DEFENDANT-APPELLANT

**JUDGMENT:**
REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-600157-A

**BEFORE:** Stewart, J., Kilbane, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** July 5, 2018

**ATTORNEYS FOR APPELLANT**

Joseph C. Patituce
Megan Patituce
Catherine Meehan
Patituce & Associates
26777 Lorain Road, Suite 1
North Olmsted, OH 44070


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

Maxwell Martin
Mary Frey
Assistant County Prosecutors
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH 44113

PATRICIA ANN BLACKMON, J.:

**{¶1}** Defendant-appellant, Mitchell Hartman ("Hartman"), appeals his rape convictions and accompanying sexually violent predator specifications. Because, in Part II of this opinion, the majority of this panel finds that the cumulative effects of the improperly admitted other acts evidence and the erroneous flight jury instruction were prejudicial to Hartman, the case is reversed and remanded for a new trial on all counts.

**{¶2}** Judge Patricia Ann Blackmon delivers the opinion of the court as to part I addressing the sufficiency of the evidence, as well as the jury instruction on minimal force, and would affirm the convictions on those grounds. Presiding Judge Mary Eileen Kilbane joins that opinion in full. Judge Melody J. Stewart concurs in part and dissents in part, with a separate opinion.

**{¶3}** Judge Stewart delivers the opinion of the court as to part II addressing the remaining assignments of error and finds reversible error based on the flight instruction and the introduction of other acts evidence in violation of Evid.R. 404(B). Judge Kilbane joins that opinion in full. Judge Blackmon dissents in part and concurs in part, with a separate opinion.

## Part I.

**{¶4}** Mitchell Hartman ("Hartman") appeals his rape conviction and assigns the following errors for our review:

> I.   The admission of other acts evidence pursuant to Evid.R. 404(B) was an abuse of discretion and did not constitute harmless error.

II.  The trial court committed reversible error by including the flight and minimal force instructions, which cause[d] substantial prejudice that did not constitute harmless error.

III.  Appellant's conviction was against the manifest weight of the evidence.

IV.  Appellant's conviction was not supported by legally sufficient evidence.

For ease of discussion, the assignments of error will be addressed out of order. The apposite facts follow.

{¶5} On October 11, 2015, E.W. was in Cleveland with her boyfriend Chris and another couple, Stephanie and Jeremy.  They were staying in a hotel downtown and, Hartman, who was a friend of Jeremy's, came to their hotel room for drinks.  Just before 10:00 p.m., the group went out to a bar and restaurant.  After about an hour, E.W. wanted to go back to the hotel, because she was tired and Hartman was being "touchy-feely" with her.  At 10:57 p.m., Chris walked E.W. back to the hotel, then left to rejoin the group.  E.W. went to bed.

{¶6} Later that night, E.W. woke up to Hartman putting his penis in her mouth.  E.W. screamed and Hartman left her hotel room.  E.W. called Chris, who returned to the hotel with Stephanie.  They went to the hotel's security office and called the police.

{¶7} On December 10, 2015, Hartman was charged with: one count of forcible rape in violation of R.C. 2907.02(A)(2), a first-degree felony, with a sexually violent predator specification; one count of substantially impaired rape in violation of R.C. 2907.02(A)(1)(c), a first-degree felony, with a sexually violent predator specification; one count of burglary in violation R.C. 2911.12(A)(1), a second-degree felony; and one count of kidnapping in violation of R.C. 2905.01(A)(4), a first-degree felony, with a sexual motivation specification.

{¶8}   On September 26, 2016, a jury convicted Hartman of the two rape charges and the sexually violent predator specifications.  Hartman was acquitted of the remaining charges.  On

November 2, 2016, the court merged the two rape counts and sentenced Hartman on the forcible rape to the mandatory minimum of life in prison with the possibility of parole after ten years.

## Sufficiency of the Evidence

{¶9} Crim.R. 29 mandates that the trial court issue a judgment of acquittal where the prosecution's evidence is insufficient to sustain a conviction for the offense. Crim.R. 29(A) and sufficiency of the evidence require the same analysis. *State v. Taylor*, 8th Dist. Cuyahoga No. 100315, 2014-Ohio-3134. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Driggins*, 8th Dist. Cuyahoga No. 98073, 2012-Ohio-5287, ¶ 101, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶10} The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Vickers*, 8th Dist. Cuyahoga No. 97365, 2013-Ohio-1337, citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991).

## Forcible Rape

{¶11} In the case at hand, Hartman argues that the state presented insufficient evidence to convict him of forcible rape in violation of R.C. 2907.02(A)(2), which states that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." Specifically, Hartman argues that there was no evidence he used force or threat of force against E.W. Force is defined in R.C. 2901.01(A)(1) as

"any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing."

## Substantially Impaired Rape

{¶12} Hartman also argues that the state presented insufficient evidence of substantially impaired rape in violation of R.C. 2907.02(A)(1)(c), which states that "[n]o person shall engage in sexual conduct with another * * * when * * * [t]he other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * *." This court has repeatedly held that sleep is a mental or physical condition that "substantially impairs" a victim as envisioned by R.C. 2907.02(A)(1)(c). *State v. Clark*, 8th Dist. Cuyahoga No. 90148, 2008-Ohio-3358, ¶ 20. Specifically, Hartman argues that "E.W.'s testimony as to whether she was asleep at the time was inconsistent."[1]

## Sexually Violent Predator Specification

{¶13} Hartman further argues that the state presented insufficient evidence to show that he is a sexually violent predator. Pursuant to R.C. 2971.01(H)(1), a sexually violent predator is "a person who * * * commits a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses." Specifically, Hartman argues that there was no evidence that his behavior was "chronic."

{¶14} At trial, E.W. testified as follows about the events in question.

{¶15} E.W., her boyfriend Chris, and their friends Stephanie and Jeremy, visited Ohio for a weekend in October 2015. They went to an Ohio State game on Saturday and spent Sunday night in Cleveland. The plan was to meet up with Jeremy's friend, Hartman, for "food and some

---

[1] We note that appellate courts "do not consider the credibility of the witnesses when reviewing a sufficiency of the evidence claim." *In re C.A.*, 8th Dist. Cuyahoga No. 102675, 2015-Ohio-4768, ¶ 51. Nonetheless, we review Hartman's assigned error in its entirety.

drinks and then call it an early night for our flight the next day." E.W. had met Hartman once previously when he visited Stephanie and Jeremy in South Carolina.

{¶16} On the night in question, Hartman came to the hotel and the group "had a couple drinks," then went out to a bar. E.W. testified that she had one beer in the hotel room and "three or four" vodka and Red Bulls at the bar. As to her interaction with Hartman at the bar, E.W. testified as follows: "I did feel like some definite creepy vibes trying to flirt and stuff. He was flirting with Stephanie and myself." Asked what she meant, E.W. testified that

> just the fact that I was there with my boyfriend and someone that I did not know too well just coming on a little strong. Just being a little bit touchy-feely maybe. Just, I always trust my gut instincts and I was just getting some creepy vibes. After about an hour or so I was ready to go home and remove myself from the situation. * * * I did not want to continue to have myself in a drinking situation where I felt uncomfortable. And I was also tired and knew we had a flight early the next day so I was ready to go to bed.

{¶17} E.W. testified that she "had a little bit of a buzz" but that she was not intoxicated. Chris walked E.W. back to the hotel "[p]robably about 11:15" and put her to bed. "We walked in. He tucked me in and kissed me good night and I said, 'See you later.'" According to E.W., Chris was meeting up with Stephanie at the casino. She did not know what Jeremy and Hartman's plans were. E.W. fell asleep with her clothes on because the other three were coming back to the room later. "I knew they were going to wake me up. I just figured I would change into my night clothes then."

{¶18} Barbara Noel testified that she is the "front desk agent" at the Westin hotel in downtown Cleveland, which is where the events at issue in this case took place. According to Noel, at approximately 1:00 a.m. on October 12, 2015, Hartman came up to the front desk and asked for "a key to a specific room," because "he needed to get his bags." Noel testified that Hartman's name was not on the reservation and, under the hotel's policy, she could not issue him

a key. Noel and Hartman called "the person who had the reservation" and got authorization to issue Hartman a key. Noel then gave Hartman a key to the room where the victim was sleeping. Hartman took the key and Noel assumed he went to the room. Shortly after this, Hartman "[j]ust dropped off the key at the desk and left."

{¶19} E.W. continued her testimony about what happened next as follows: "After I fell asleep I woke up to Mr. Hartman putting his penis in my mouth. And I screamed, 'What are you doing?' And he said, 'What, you're not going to finish?' And I screamed at him to get out. And he left quickly."

{¶20} E.W. testified that she did not hear Hartman come into her hotel room, she did not know that Hartman was coming into her hotel room, and she did not want him there. Asked how Hartman was able to put his penis in her mouth as she slept, E.W. answered as follows: "I was laying on the side of the bed and I always lay like this. So I guess my mouth was a little bit open. * * * After I fell asleep I woke up to Mr. Hartman putting his penis in my mouth." E.W. testified that her "mouth was penetrated" by Hartman's penis, which was "partially erect." Asked "[w]ho caused the penis to be in your mouth," the victim answered Hartman. Asked "how far it penetrated your mouth," E.W. stated, "[p]robably about halfway * * *."

{¶21} E.W. testified that she "was dead asleep when it happened," but she woke up abruptly. "Well, my mouth was penetrated and then I looked up and it was just a man putting his penis in my mouth." E.W. testified that this was not something that she wanted and that it was not consensual. After the incident, E.W. immediately called Chris and told him what happened. "I was in hysterics. * * * I just was crying uncontrollably, freaking out, in shock, and so I called Chris because I needed him to be back and everyone to be back." E.W. estimated that it was "probably about 1:00 in the morning."

**{¶22}** Upon review, we find that this testimony is sufficient to show that E.W. was substantially impaired, i.e., asleep, when Hartman put his penis in her mouth. *See State v. McCall*, 8th Dist. Cuyahoga No. 104479, 2017-Ohio-296, ¶ 10 (substantially impaired rape conviction supported by sufficient evidence when victim testified that she woke up to the defendant's mouth on her vagina).

**{¶23}** Additionally, this testimony is sufficient to show that Hartman used the requisite force to establish rape under R.C. 2907.02(A)(2). The Ohio Supreme Court has held that "force can be inferred from the circumstances surrounding sexual conduct * * *." *State v. Schaim*, 65 Ohio St.3d 51, 55, 600 N.E.2d 661 (1992). This court has held that "[i]n the situation where the victim is sleeping and thus not aware of the defendant's intentions, only minimal force is necessary to facilitate the act." *Clark*, 8th Dist. Cuyahoga No. 90148, 2008-Ohio-3358, at ¶ 17. *See also State v. Fortson,* 8th Dist. Cuyahoga No. 92337, 2010-Ohio-2237, ¶ 75 ("Although there was no evidence * * * that defendant removed or manipulated the rape victim's clothing while she was sleeping, we find that a rational trier of fact could have inferred that defendant must have used minimal force to facilitate sexual conduct with a sleeping [person]").

**{¶24}** Furthermore, the evidence is sufficient to convict Hartman of the sexually violent predator specification under R.C. 2941.148(A). Factors to consider in determining whether an offender is likely to commit sexual offenses in the future include whether "[t]he person has been convicted two or more times, in separate criminal actions, of a sexually oriented offense or a child-victim oriented offense. For purposes of this division, convictions that result from or are connected with the same act or result from offenses committed at the same time are one conviction * * *." R.C. 2971.01(H)(2)(a). In 2012, Hartman pled guilty to abduction and attempted felonious assault in relation to an incident with B.T., his former stepdaughter, who was

12 years old at the time of the offenses. *State v. Hartman*, Cuyahoga C.P. 12-CR-566789 (Oct. 21, 2013). Hartman's 2012 convictions involve a child victim, and his convictions in the case at hand are of sexually oriented offenses.

**{¶25}** Upon review, we find that there is sufficient evidence to convict Hartman of forcible rape, substantially impaired rape, and the sexually violent predator specifications. Hartman's fourth assigned error is overruled.

### Minimal Force Instruction

**{¶26}** In the instant case, the court also instructed the jury as follows: "If you find E.W. was sleeping and thus not aware of the defendant's intentions, only minimal force is necessary to facilitate the act of rape." Hartman argues that this instruction was improper, because there was no evidence of force. We addressed this issue under Hartman's sufficiency of the evidence argument and found that a jury could reasonably infer that minimal force was used from E.W.'s testimony that she woke up with Hartman's penis in her mouth. The same reasoning applies, and we find no abuse of discretion in the court's instructing the jury regarding minimal force.

**{¶27}** Accordingly, Hartman's second assigned error is overruled in part.

_____

PATRICIA ANN BLACKMON, JUDGE

MARY EILEEN KILBANE, P.J., CONCURS;
MELODY J. STEWART, J., CONCURS IN PART AND DISSENTS IN PART (WITH SEPARATE OPINION ATTACHED)

MELODY J. STEWART, J., CONCURRING IN PART, AND DISSENTING IN PART:

{¶28}   Although I agree that the state offered sufficient evidence to sustain the rape charge in Count 2 relating to substantial impairment, I disagree that the state proved that Hartman acted with force sufficient to sustain a conviction for the rape charge in Count 1.  I would therefore vacate the forcible rape conviction.

{¶29} Count 1 of the indictment charged Hartman with rape in violation of R.C. 2907.02(A)(2).  That section states that no person shall engage in sexual conduct with another "when the offender purposely compels the other person to submit by force or threat of force." "Force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing."  R.C. 2901.01(A).  The force element of R.C. 2907.02(A)(2) is the extrinsic force used to compel the victim's submission to sexual conduct; it is not the sexual conduct itself.

{¶30} The state offered no evidence of force of any kind to sustain a rape conviction under R.C. 2907.02(A)(2).  In some rape cases, force is obvious.  *See, e.g., State v. Shadoan*, 4th Dist. Adams No. 03CA764, 2004-Ohio-1756, ¶ 9 (defendant inserted his penis in victim's mouth and put his hands on her head, moving her head in an up-and-down motion).  In other cases, force is more subtle.  *See, e.g.*, *Clark*, 8th Dist. Cuyahoga No. 90148, 2008-Ohio-3358, at ¶ 17 (force element in a case of digital rape of a sleeping victim was established by removing or manipulating the victim's clothing in order to gain access to her vagina).  *But see State v. Wine*, 3d Dist. Auglaize No. 2-12-01, 2012-Ohio-2837, ¶ 48 ("we are not persuaded" to follow the line of cases holding that manipulation of a sleeping victim's body or clothing is sufficient force under R.C. 2907.02(A)(2)).

**{¶31}** The victim in this case testified that she had been sleeping on her side with her mouth open. She awoke to find a penis in her mouth and, thinking that the person in the room was her boyfriend, she slightly opened her mouth to receive him. It was only after doing so that she realized the person in the room was Hartman and not her boyfriend. There was no testimony that her clothing, the bedding, or her body had been disturbed or manipulated in any way prior to, or during Hartman's engaging in sexual conduct with her. The victim's testimony on cross-examination confirmed the lack of force:

> Q. Then your testimony was that at some point you're awoken to a penis going into your open mouth?
>
> A. Yes, sir.
>
> Q. And your testimony further is that you do not believe that the person who had done this had moved you or shifted your body in any way? Other than putting his penis into your mouth?
>
> A. Yes, sir.
>
> Q. And he didn't move your body from one side of the bed to the other?
>
> A. No, sir.
>
> Q. You have no reason to believe he had rolled you over?
>
> A. No, sir.
>
> Q. Taken your covers off?
>
> A. No, sir.
>
> Q. Taken any clothing off?
>
> A. No, sir.
>
> Q. During this event did Mitchell Hartman threaten you in any way?
>
> A. No, sir.

Q. Did he then threaten to use force upon you in any way?

A. No, sir.

Q. Were you given the impression if you did not continue he would use force upon you?

A. No, sir.

Q. Did he — again, I do apologize. But did he hold you while the fellatio was performed? In other words, did he hold your head or anything like that?

A. I don't remember.

Q. You have no reason to believe that he had moved your head or moved your neck or your body in any way?

A. I don't think so. No, sir.

Tr. 670-671.

{¶32} Additionally, there was no evidence of any inherent coercion. *See, e.g.*, *State v. Garner*, 8th Dist. Cuyahoga No. 89840, 2008-Ohio-1949, ¶ 29 (as live-in boyfriend of victim's mother, defendant possessed parental authority over victim, so inherent coercion was present in his instructions despite no evidence of physical force).

{¶33} A conviction on a count of rape under R.C. 2907.02(A)(2) requires both sexual conduct and the use of force or the threat of force. The state offered no evidence at trial, and likewise points to none on appeal, to show that Hartman used force or the threat of force, physical or coercive, to compel the victim to submit to the offense.

{¶34} The cases the majority cites to in support of its analysis are not compelling. Those cases stand for the proposition that even a minimal amount of force necessary to facilitate the offending conduct satisfies the force element of the statute, but not the offending conduct itself. Unlike the cases cited by the majority, the victim's testimony in this case not only fails to demonstrate any use of force or threat of force to compel the victim to submit to the offense, the victim's testimony clearly establishes that no force or threat of force whatsoever was used against

her. In finding that Hartman's sexual conduct against the victim, in and of itself, is enough to satisfy the force element of the statute, the majority has in effect made every act of rape a violation of R.C. 2907.02(A)(2).

{¶35} Because I find that there was insufficient evidence to sustain a forcible rape conviction, I find it was error to give the minimal force instruction to the jury in this case and would sustain the second assignment of error on this issue also.

## Part II.

MELODY J. STEWART, J.:

### Other Acts Evidence

{¶36} Over objection and with a cautionary instruction to the jury regarding other acts evidence, the court allowed Hartman's former stepdaughter to testify that in the course of a single night some more than four years earlier, when she was 12 years old, Hartman entered her room three different times on one evening and, while she pretended to be asleep, touched her chest, attempted to touch her vagina, and put her hand on his penis. Hartman argues that the testimony violated Evid.R. 404(B) because it was dissimilar to the acts alleged in this case and offered only to show that he had the propensity to commit rape.

{¶37} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Evid.R. 404(B). Such evidence may, however, be admissible for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B).

> [O]ther acts [evidence] is admissible if it is offered for a purpose other than to prove the character of a person in order to show action in conformity with that character, Evid.R. 404(B), it is relevant when offered for that purpose, Evid.R. 401, and the danger of unfair prejudice does not substantially outweigh its probative value, Evid.R. 403.

*State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 68, citing *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 20.

**{¶38}** Courts must use a three-step analysis when considering whether to admit other acts evidence: (1) is the other acts evidence relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence; (2) is the evidence of other crimes, wrongs, or acts presented to prove the character of the accused in order to show activity in conformity therewith or is the other acts evidence presented for a legitimate purpose; and (3) is the probative value of the other acts evidence substantially outweighed by the danger of unfair prejudice. *Williams* at ¶ 20.

**{¶39}** Although there are several uses for other acts evidence, it is typically applied to questions of identity — that evidence of an act is so similar to the act underlying the charged offense that the defendant's involvement in one is inferred from his involvement in the other. Even though the state claimed that it offered the other acts evidence in this case to show scheme, plan, or system, its argument truly centered on identity. The state claimed that "[t]he offered other acts evidence is evidence which shows not that Defendant is the type of person who might commit the indicted offenses, but rather evidence *which shows that Defendant is the person who committed these offenses*, and that it was his specific intent to commit rape." (Emphasis added.) State's notice of intent to use other acts evidence at 4. In addition, the state told the court that "[h]ere, the other acts evidence is related to and shares common features with the crimes in question, reflecting a modus operandi or behavioral fingerprint *identifiable with Defendant*." (Emphasis added.) *Id*. The term "modus operandi" means the method of operating or the manner of procedure and is attached to the identity purpose of Evid.R. 404(B). *See State v.*

*Lowe*, 69 Ohio St.3d 527, 634 N.E.2d 616 (1994), paragraph one of the syllabus ("To be admissible to prove identity through a certain modus operandi, other acts evidence must be related to and share common features with the crime in question."). *See also State v. Jamison*, 49 Ohio St.3d 182, 552 N.E.2d 180 (1990), syllabus.

{¶40} The problem with the state's use of the other acts evidence to prove identity is that Hartman's identity was never at issue; he conceded engaging in sexual conduct with the victim. The primary issue at trial was consent — Hartman maintained that he and the victim engaged in consensual sexual conduct, but that she later claimed that she had been raped in order to calm her boyfriend's anger after the fact. Evidence that Hartman sexually assaulted his stepdaughter had no relevance to the one fact of consequence — whether the victim consented.

{¶41} The state also maintained that the other acts evidence would show motive: "the State intends to use other acts evidence to show Defendant's motive, specifically, sexual gratification." This was a self-evident proposition — sexual gratification is almost always the motive behind a sexual offense and requires no additional proof.

{¶42} The state also represented in its notice of intent to use other acts evidence that Hartman "targeted females who were vulnerable, alone, were either asleep or otherwise unaware of his presence, and who he could easily isolate and control." Notice of intent to use other acts evidence at 4. That the victims in both cases were sleeping did not go to motive; the state made no argument that Hartman was a somnophiliac.

{¶43} Finally, the admitted evidence was highly prejudicial to Hartman. Although the court instructed the jury on other acts evidence immediately before and after the stepdaughter testified, that instruction was insufficient to cure the error in admitting the evidence. Even though the state offered the evidence to prove identity, the court's instruction was not tailored to

that purpose. It told the jury that it could consider the other acts evidence to prove that Hartman acted in the absence of mistake or accident; that it could prove Hartman's motive, opportunity, or intent to commit the rape; that it could prove his purpose, preparation, or plan to commit the rape; and that it could prove Hartman's knowledge of the circumstances surrounding the rape charge. The instruction thus allowed the jury to consider the evidence for purposes that even the state did not claim existed in this case.

{¶44} This was error — the instruction should have articulated the specific basis upon which the jury could consider the other acts evidence. *See United States v. Crenshaw*, 359 F.3d 977, 998 (8th Cir.2004) (government "offered a variety of hypothetical uses under Rule 404(b) for this evidence, but gave no concrete reason for admission" and "never clearly articulated the basis upon which it admitted [the other acts evidence]."); *United States v. Ward*, 190 F.3d 483, 488 (6th Cir.1999). Because the court allowed the jury to determine for itself whether the other acts evidence went to proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, it created the risk that the jury considered the other acts evidence for a purpose that had no basis in evidence.

{¶45} There is no question that the stepdaughter's testimony was highly prejudicial to Hartman: it not only portrayed him as a repeat sex offender, but as a pedophile too. The prejudice substantially outweighed the probative value of the evidence for purposes of Evid.R. 403(A) and the jury instruction did not cure the prejudice. We conclude that the court abused its discretion by admitting the other acts evidence.

**Flight Instruction**

**{¶46}** The court instructed the jury that testimony had been admitted showing that Hartman "fled the scene" and that although that fact does not raise a presumption of guilt, his act of fleeing "may tend to indicate the defendant's consciousness of guilt" and that it consider that evidence in deciding Hartman's guilt. Hartman complains that the flight instruction was unwarranted.

**{¶47}** "Flight from justice" means "some escape or affirmative attempt to avoid apprehension." *State v. Wesley*, 8th Dist. Cuyahoga No. 80684, 2002-Ohio-4429, ¶ 19. To escape from or avoid apprehension means more than just leaving the scene of a crime because it would be unrealistic to expect persons who commit crimes to remain on the scene for ready apprehension. *State v. Santiago*, 8th Dist. Cuyahoga No. 95516, 2011-Ohio-3058, ¶ 30. "Flight in this context requires the defendant to appreciate that he has been identified as a person of interest in a criminal offense and is taking active measures to avoid being found." *State v. Ramos,* 8th Dist. Cuyahoga No. 103596, 2016-Ohio-7685, ¶ 28.

**{¶48}** We have been critical of flight instructions given in circumstances where a defendant has merely left the scene of a crime as opposed to actively avoiding apprehension by the police. *See, e.g., Ramos*; *State v. Potts*, 8th Dist. Cuyahoga No. 104482, 2017-Ohio-4435, ¶ 50; *State v. Wynn*, 8th Dist. Cuyahoga No. 103824, 2017-Ohio-4062, ¶ 58. The same holds true here — there was no evidence that Hartman was actively trying to avoid apprehension by the police. The court erred by giving the jury a flight instruction.

**{¶49}** The court's error in giving the instruction in this case is particularly puzzling because the state's request for the flight instruction specifically noted that Hartman left the victim's room because the victim demanded that he leave — when she realized that it was

Hartman and not her boyfriend who was engaging in sexual conduct with her, she "screamed at him to get out of the room." When requesting the flight instruction, the assistant prosecuting attorney told the court that "[t]here was testimony in evidence that the defendant fled when he was confronted by the victim as she awoke and told him to leave. And he did leave in a hurry apparently." By the state's own representation, Hartman obeyed the victim's demand to leave the room.

{¶50} The frequency with which flight instructions issues are being raised on appeal is troubling. Although a number of recent decisions from this court have made it clear that the flight instruction is often being wrongly given, the state keeps requesting it in cases where the instruction is unwarranted. And even though the instructions are requested by prosecuting attorneys, the error lies with the trial court continuing to give the flight instruction without regard to our established precedent.

{¶51} In all of our recent cases finding error in giving the flight instruction, the cases have been affirmed because the error was harmless beyond a reasonable doubt. *See, e.g, Ramos,* 8th Dist. Cuyahoga No. 103596, 2016-Ohio-7685, at ¶ 30; *Potts,* 8th Dist. Cuyahoga No. 104482, 2017-Ohio-4435, at ¶ 51; *Wynn*, 8th Dist. Cuyahoga No. 103824, 2017-Ohio-4062, at ¶ 59; *State v. Shepherd*, 8th Dist. Cuyahoga No. 102951, 2016-Ohio-931, ¶ 26; *State v. Halstead*, 8th Dist. Cuyahoga No. 102723, 2016-Ohio-290, ¶ 16; *State v. Dunn*, 8th Dist. Cuyahoga No. 101648, 2015-Ohio-3138, ¶ 56; *State v. Jackson*, 8th Dist. Cuyahoga No. 100125, 2014-Ohio-3583, ¶ 50. For our purposes here, however, the error in giving the flight instruction was not harmless in light of the court's error in admitting the other acts evidence under Evid.R. 404(B). The cumulative effect of the two errors is such that Hartman did not receive a fair trial.

**Manifest Weight**

**{¶52}** Because the matter is being remanded for a new trial, Hartman's argument that his convictions are against the manifest weight of the evidence are rendered moot. *State v. Hardman*, 8th Dist. Cuyahoga No. 102600, 2016-Ohio-498, ¶ 46.

**{¶53}** The first assignment of error is sustained and the second assignment of error is sustained in part. The third assignment of error is overruled as moot.

**{¶54}** Judgment reversed and remanded for a new trial excluding the inadmissible other acts evidence and flight instruction.

It is ordered that appellant recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MELODY J. STEWART, JUDGE

MARY EILEEN KILBANE, P.J., CONCURS;
PATRICIA ANN BLACKMON, J., DISSENTS IN PART AND CONCURS IN PART (WITH SEPARATE OPINION ATTACHED)

PATRICIA ANN BLACKMON, J., DISSENTING IN PART, AND CONCURRING IN PART:

**{¶55}** I respectfully dissent from the majority's opinion regarding the admission of other acts evidence and the prejudicial effect of instructing the jury regarding flight from justice. Accordingly, I would affirm Hartman's rape convictions.

**{¶56}** First, in my opinion, the court did not abuse its discretion by admitting evidence that Hartman molested his former stepdaughter while she was sleeping. Prior to trial, the court held a hearing on this other acts evidence at which the state argued that the stepdaughter's testimony was admissible to show Hartman's motive, intent, plan, scheme, and absence of mistake. Contrary to the majority's opinion, the state did not offer this evidence to show the identity of the offender. Hartman's identity is not in question. Rather, the notice the state filed in the trial court and the arguments the state made at the hearing show that the state's purpose in introducing these acts was to prove Harman's "motive, intent, plan, and scheme."

**{¶57}** The state argued that Hartman's conduct "has become a behavioral fingerprint and 404(B) evidence is appropriate to prove motive, opportunity, intent, preparation, knowledge, or absence of mistake." The state further argued that the "404(B) evidence would act to expressly rebut [the] anticipated offense of consent * * *." In other words, Hartman was not under the mistaken impression that the sexual encounter was consensual, because the other acts evidence shows his modus operandi is to sexually assault sleeping women.

**{¶58}** Testimony in the record is consistent that Hartman knew which room E.W. was in, and he knew that E.W. was asleep and alone.

**{¶59}** The hotel's front desk manager testified that, on the night in question, Hartman asked for "a key to a specific room," because "he needed to get his bags." Hartman's name was not on the reservation and, under the hotel's policy, the manager could not issue him a key. The manager and Hartman called "the person who had the reservation" and got authorization to issue Hartman a key. According to the manager, Hartman took the key to the room where E.W. was sleeping, and shortly after this, Hartman "[j]ust dropped off the key at the desk and left."

{¶60} With this evidence in mind, the testimony from the stepdaughter that Hartman sexually assaulted her while she was sleeping is relevant to whether Hartman sexually assaulted E.W. while she was sleeping. The stepdaughter's testimony shows Hartman's "motive, his intent, his plan, or scheme, and his absence of mistake" in entering the victim's hotel room — namely to sexually assault E.W. while she was sleeping, and not, as the defense suggested, to retrieve a bag he allegedly left in the hotel room.

{¶61} Additionally, I would find that the probative value of this evidence was not outweighed by the danger of unfair prejudice, and therefore, conclude that the court did not abuse its discretion by admitting this evidence at trial.

{¶62} Additionally, while I agree with the majority that the court erred by giving the jury a flight from justice instruction, I would find this error harmless and would conclude that Hartman received a fair trial.

{¶63} Finally, I would overrule the third assignment of error on the merits because I find that Hartman's convictions are not against the manifest weight of the evidence.